## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT F. BOOTH TRUST, derivatively on behalf of eBAY INC., <br><br> Plaintiff, <br><br> vs. <br><br> FRED D. ANDERSON, MARC L. ANDREESSEN, EDWARD W. BARNHOLT, PHILIPPE E. M. BOURGUIGNON, SCOTT D. COOK, JOHN J. DONAHOE, WILLIAM C. FORD, JR., DAWN G. LEPORE, DAVID M. MOFFETT, PIERRE M. OMIDYAR, RICHARD T. SCHLOSBERG, III, and THOMAS J. TIERNEY, <br><br> Defendants, <br><br> -and- <br><br> eBAY INC., <br><br> Nominal Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. _____ |

### VERIFIED DERIVATIVE COMPLAINT

Plaintiff, a shareholder of eBay Inc. ("eBay" or the "Company"), brings this action derivatively, pursuant to Fed. R. Civ. P. 23.1, on behalf of eBay for injunctive relief against defendants and makes these allegations upon personal knowledge as to himself and on information and belief as to all other matters based upon the investigation of his counsel, which included: a review of the public filings with the Securities and Exchange Commission (the "SEC"), news items, relevant court records, and other public information. Plaintiff believes that further evidence supporting the claims alleged herein will be forthcoming upon a reasonable opportunity for discovery.

## NATURE OF ACTION

1.     Plaintiff seeks to enjoin defendants' continued violation of the Clayton Act's prohibition against "interlocking directorships." Dawn Lepore ("Lepore") is a director of both eBay and The New York Times Company (the "NY Times"). Both companies compete with each other within the meaning of section 8 of the Clayton Act ("Section 8"), 15 U.S.C. §19, in the area of national, retail and classified advertising.

2.     Section 8 prohibits a person from serving as a director or officer of two or more corporations if: (a) the combined capital, surplus and undivided profits of each of the corporations exceeds $25,841,000;[1] (b) each corporation is engaged in commerce; and (c) the corporations are competitors with certain threshold competitive annual sales. Both eBay and the NY Times easily meet these statutory criteria. Although the statute contains some exemptions, none apply here.[2] The purpose of Section 8 is prophylactic – to prevent a violation of the U.S. antitrust laws.

3.     eBay describes itself as "the world's largest online marketplace, where practically anyone can buy and sell practically anything." Significant portions of eBay's revenues are derived from the sale of classifieds, and from display or banner advertising, often to large, multi-national interests. eBay competes for business from those who seek to sell or advertise a vast

---

[1] This statutory threshold is adjusted every year as determined by the Department of Commerce and published by the Federal Trade Commission (the "FTC"). 15 U.S.C. § 19(a)(5). On January 19, 2010, the FTC announced this new threshold amount.

[2] Exempted from Section 8's prohibitions are interlocks for which: (1) the competitive sales of either corporation are less than $1 million (or as of January 19, 2010: $2,584,100); (2) the competitive sales of either corporation are less than 2 percent of that corporation's total sales; or, (3) the competitive sales of each corporation are less than 4 percent of that corporation's total sales. 15 U.S.C. § 19(a)(2)(A)-(C). The term "competitive sales" is defined as "the gross revenues for all products and services sold by one corporation in competition with the other, determined on the basis of annual gross revenues for such products and services in that corporation's last completed fiscal year" and the term "total sales" means "the gross revenues for all products and services sold by one corporation over that corporation's last completed fiscal year." 15 U.S.C. § 19(a)(2). As explained herein, none of these exemptions apply in this action.

number of products and services.

4.      eBay competes with, among others, the NY Times. The NY Times also derives a substantial part of its revenues from advertising and classifieds, and competes for the business of those seeking to sell or advertise a variety of products and services. The NY Times maintains a website, NYTimes.com, on which people and businesses can list their classified ads. The NY Times also sells classified ad space in its newspapers, which have a nationwide circulation.

5.      Defendant Lepore is an interlocking director within the meaning of Section 8. She is a member of the eBay Board of Directors (the "Board") and the board of the NY Times. This action seeks to enjoin this illegal interlock by the removal of Lepore from the Board of eBay.

6.      eBay and its Board are familiar with the U.S. antitrust laws and the prohibition against interlocking directors under Section 8. For example, eBay owns approximately 25% of craigslist, Inc. ("Craigslist"), a private company that runs a competing classifieds business. eBay brought suit in Delaware Chancery Court against Craigslist, after Craigslist sought to throw eBay off its board of directors for allegedly spying on Craigslist. Craigslist, in turn, sued eBay in California Superior Court, alleging that eBay and defendant Omidyar were violating the antitrust laws by trying to maintain a director on the Craigslist board, to steal Craigslist's confidential information about its classifieds business and otherwise violate Section 8. Whatever the outcome of the litigation between Craigslist and eBay, it is plain that eBay and the Board are familiar with Section 8 and its requirements.

7.      A pre-suit demand on the eBay Board is futile and excused. A majority of the twelve members of the current Board nominated Lepore for reelection to the eBay Board in 2009 and recommended that eBay shareholders vote for her, in violation of Section 8. In addition, the Board has allowed Lepore to remain on the Board, even after receiving unmistakable notice, *via*

the Craigslist litigation, of the requirements of Section 8 and its prohibitions against interlocking directors. Because a majority of the current Board committed these void and *ultra vires* acts by allowing Lepore to continue to serve on the eBay Board and in nominating her for election to the Board with a recommendation that shareholders vote for her, a pre-suit demand on the current Board would be futile under Delaware law and is excused.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction of this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, for violations of Section 8 of the Clayton Act, 15 U.S.C. § 19, and under 28 U.S.C. §1331 and 1367. The Court has supplemental jurisdiction over Plaintiff's state-law claim alleged in Count Two, under 28 U.S.C. §1367.

9.    Venue is proper in this District pursuant to 15 U.S.C. § 22, 28 U.S.C. § 1391, and 28 U.S.C. §1401.

## PARTIES

10.    Plaintiff is, and has been at all relevant times, a shareholder of eBay.

11.    Nominal Defendant eBay is a Delaware corporation with principal executive offices at 2145 Hamilton Avenue, San Jose, California 95125.

12.    Defendant Lepore has served as a director of eBay since December 1999. Lepore has served as Chief Executive Officer and Chairman of the Board of drugstore.com, inc., a leading online provider of health, beauty, vision, and pharmacy solutions, since October 2004. From August 2003 to October 2004, Lepore served as Vice Chairman of Technology, Active Trader, Operations, Business Strategy, and Administration for the Charles Schwab Corporation and Charles Schwab & Co, Inc., a financial holding company. Prior to this appointment, she held various positions with the Charles Schwab Corporation including: Vice Chairman of Technology, Operations, Business Strategy, and Administration from May 2003 to August 2003;

Vice Chairman of Technology, Operations, and Administration from March 2002 to May 2003;

Vice Chairman of Technology and Administration from November 2001 to March 2002; and

Vice Chairman and Chief Information Officer from July 1999 to November 2001. Lepore has

also been a director on the board of the NY Times since 2008.  Lepore serves on the

Compensation and Finance Committees of the NY Times board.  Lepore holds a B.A. degree

from Smith College.

13.    Defendant Marc L. Andreessen ("Andreessen") has served as a director of eBay

since September 2008. Andreessen is a co-founder and chairman of Ning Inc., an online platform

for people to create their own social networks founded in late 2004. From September 1999 to

July 2007, Andreessen co-founded and served as the Chairman of the board of directors of

Opsware, Inc. (formerly known as Loudcloud Inc.). From March 1999 to September 1999,

Andreessen served as Chief Technology Officer of America Online, Inc. From April 1994 to

March 1999, Andreessen was a co-founder of Netscape Communications Corporation, a software

company, serving in various positions, including Chief Technology Officer and Executive Vice

President of Products. Andreessen also serves on the board of directors of Facebook Inc.,

Stanford Hospital and Room to Read. Mr. Andreessen holds a B.S. degree in Computer Science

from the University of Illinois at Urbana-Champaign.

14.    Defendant William C. Ford, Jr., ("Ford") has served as a director of eBay since

July 2005. Ford has served as Executive Chairman of the Board of Directors of Ford Motor

Company since September 2006 and has served as Chairman of the Board of Ford since January

1999. Ford also serves as Chairman of Ford's Finance Committee and as a member of Ford's

Environmental and Public Policy Committee. From October 2001 to September 2006, Ford was

Ford's Chief Executive Officer. Ford has held a number of management positions at Ford since

1979. Ford serves as Vice Chairman of The Detroit Lions, Inc. and Chairman of the Board of

Trustees of The Henry Ford. He is also a Vice Chairman of Detroit Renaissance. Ford holds a B.A. degree from Princeton University and a M.S. degree in management from the Massachusetts Institute of Technology.

15.     Defendant Pierre M. Omidyar ("Omidyar") founded eBay as a sole proprietorship in September 1995. He has been a director and Chairman of the Board since eBay's incorporation in May 1996 and also served as its Chief Executive Officer, Chief Financial Officer, and President from inception to February 1998, November 1997 and August 1996, respectively. Prior to founding eBay, Omidyar was a developer services engineer at General Magic, a mobile communications platform company, from December 1994 to July 1996. Omidyar co-founded Ink Development Corp. (later renamed eShop) in May 1991 and served as a software engineer there from May 1991 to September 1994. Prior to co-founding Ink, Omidyar was a developer for Claris, a subsidiary of Apple Inc., and for other Macintosh-oriented software development companies. Omidyar is currently cofounder and chairman of Omidyar Network, a philanthropic investment firm. He serves on the Board of Trustees of Tufts University, Omidyar-Tufts Microfinance Fund, the Santa Fe Institute and the Punahou School. Omidyar holds a B.S. degree in Computer Science from Tufts University.

16.     Defendant Richard T. Schlosberg, III, ("Schlosberg") has served as a director of eBay since March 2004. From May 1999 to January 2004, Schlosberg served as President and Chief Executive Officer of the David and Lucile Packard Foundation, a private family foundation. Prior to joining the foundation, Schlosberg was Executive Vice President of The Times Mirror Company and publisher and Chief Executive Officer of the Los Angeles Times. Prior to that, he served in the same role at the Denver Post. Schlosberg serves on the board of directors of Edison International, and is also a member of the USO World Board of Governors, a trustee of Pomona College and a founding Director of the U.S. Air Force Academy Endowment.

Mr. Schlosberg is also Chairman of the Board of the Kaiser Family Foundation. Schlosberg is a graduate of the United States Air Force Academy and holds an M.B.A. degree from the Harvard Business School. In its most recent proxy in support of Schlossberg's reelection to the Board, eBay told its shareholders that: "The Board concluded that Mr. Schlossberg should continue to serve as a director of eBay in part due to his experience as a Chief Executive Officer in the *newspaper/publishing industry*, which is particularly relevant to eBay's *classifieds business,* and extensive management experience." DEF 14A, filed March, 19, 2010, at 18 (emphasis added).

17.    Defendant Philippe E. M. Bourguignon ("Bourguignon") has served as a director of eBay from December 1999 until April 29, 2010. Bourguignon has been Vice Chairman of Revolution Resorts, a division of Revolution LLC, a company focused on health, living, and resort investments and operations, since January 2006. From April 2004 to January 2006, Bourguignon served as Chairman of Aegis Media France, a media communications and market research company. From September 2003 to March 2004, Bourguignon was Co-Chief Executive Officer of The World Economic Forum (The DAVOS Forum). From August 2003 to October 2003, Bourguignon served as Managing Director of The World Economic Forum. From April 1997 to January 2003, Bourguignon served as Chairman of the Board of Club Méditerranée S.A., a resort operator. Prior to his appointment at Club Méditerranée S.A., Bourguignon was Chief Executive Officer of Euro Disney S.A., the parent company of Disneyland Paris, since 1993, and Executive Vice President of The Walt Disney Company (Europe) S.A. since October 1996. Bourguignon was named President of Euro Disney in 1992, a post he held through April 1993. He joined The Walt Disney Company in 1988 as head of Real Estate Development. Bourguignon holds a Masters Degree in Economics at the University of Aix-en-Provence and holds a post-graduate diploma from the Institut d'Administration des Enterprises (IAE) in Paris.

18.    Defendant Thomas J. Tierney ("Tierney") has served as a director of eBay since

March 2003. Tierney is the founder of The Bridgespan Group, a non-profit consulting firm serving the non-profit sector, and has been its Chairman of the Board since late 1999. Prior to founding Bridgespan, Tierney served as Chief Executive Officer of Bain & Company, a consulting firm, from June 1992 to January 2000. Tierney holds a B.A. degree in Economics from the University of California at Davis and an M.B.A. degree with distinction from the Harvard Business School. Tierney is the co-author of a book about organization and strategy called Aligning the Stars.

19.     Defendant David M. Moffett ("Moffett") has served as a director of eBay since July 2007. Moffett served as Chief Executive Officer of Federal Home Loan Mortgage Corp. (Freddie Mac) from September 2008 to March 2009, as a director of Freddie Mac from December 2008 to March 2009. Moffett has more than 30 years of strategic finance and operational experience in banking and payment processing. He joined Star Banc Corporation in 1993 as CFO and played integral roles as Star Banc Corporation acquired Firstar Corporation in 1998, which then acquired U.S. Bancorp in February 2001, retaining the U.S. Bancorp name. Prior to 1993, Moffett held executive level positions at some of the nation's leading financial services companies, including Bank of America and Security Pacific Corp. Moffett holds a B.S. degree in Economics from the University of Oklahoma and a Master's degree from Southern Methodist University.

20.     Defendant Fred D. Anderson ("Anderson") has served as a director of eBay since July 2003. Anderson has been a Managing Director of Elevation Partners, a private equity firm focused on the media and entertainment industry, since July 2004. From March 1996 to June 2004, Anderson served as Executive Vice President and Chief Financial Officer of Apple Inc., a manufacturer of personal computers and related software. Prior to joining Apple Inc., Anderson was Corporate Vice President and Chief Financial Officer of Automatic Data Processing, Inc., an

electronic transaction processing firm, from August 1992 to March 1996. On April 24, 2007, the

SEC filed a complaint against Anderson and another former officer of Apple Inc. The complaint

alleged that Anderson failed to take steps to ensure that the accounting for an option granted in

2001 to certain executives of Apple Inc., including himself, was proper. Simultaneously with the

filing of the complaint, Anderson settled with the SEC, neither admitting nor denying the

allegations in the complaint. In connection with the settlement, Anderson agreed to a permanent

injunction from future violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933

and Section 16(a) of the Exchange Act and Rules 13b2-2 and 16a-3 thereunder, and from aiding

and abetting future violations of Sections 13(a), 13 (b)(2)(A), 13(b)(2)(B), and 14(a) of the

Exchange Act and Rules 12b-20, 13a-1, 13a-13, and 14a-9 thereunder. He also agreed to

disgorge approximately $3.5 million in profits and interest from the option he received and to

pay a civil penalty of $150,000. Under the terms of the settlement, Anderson may continue to act

as an officer or director of public companies. Anderson also serves on the board of directors of

Move, Inc. and Palm, Inc. Mr. Anderson holds a B.A. degree from Whittier College and an

M.B.A. degree from the University of California, Los Angeles.

21.     Defendant Edward W. Barnholt ("Barnholt") has served as a director of eBay

since April 2005. Barnholt served as President and Chief Executive Officer of Agilent

Technologies, Inc., a measurement company, from May 1999 until March 2005, and served as

Chairman of the Board of Agilent from November 2002 until March 2005. Before being named

Agilent's Chief Executive Officer, Barnholt served as Executive Vice President and General

Manager of Hewlett-Packard Company's Measurement Organization from 1998 to 1999. From

1990 to 1998, he served as General Manager of Hewlett-Packard Company's Test and

Measurement Organization. He was elected a Senior Vice President of Hewlett-Packard

Company in 1993 and an Executive Vice President in 1996. Barnholt also serves as the Non-

Executive Chairman of the Board of KLA-Tencor Corporation, a member of the Board of Directors of Adobe Systems Incorporated, and a member of the Board of Trustees of the David and Lucile Packard Foundation. Barnholt holds a B.S. and an M.S. degree in electrical engineering from Stanford University.

22.     Defendant Scott D. Cook ("Cook") has served as a director of eBay since June 1998. Cook is the founder of Intuit Inc., a maker of business and financial management technology solutions, including Quickbooks, Quicken and TurboTax. Cook has been a director of Intuit since March 1984 and is currently Chairman of the Executive Committee of the Board of Intuit. From March 1993 to July 1998, Cook served as Chairman of the Board of Intuit. From March 1984 to April 1994, Cook served as President and Chief Executive Officer of Intuit. Cook also serves on the board of directors of The Procter & Gamble Company, The Asia Foundation and The Intuit Scholarship Foundation. Cook holds a B.A. degree in Economics and Mathematics from the University of Southern California and an M.B.A. degree from the Harvard Business School.

23.     Defendant John J. Donahoe ("Donahoe") serves as the President and CEO of eBay. He has served in that capacity since March 2008, as a director of eBay since January 2008. From January 2008 to March 2008, Donahoe served as CEO-designate. From March 2005 to January 2008, Donahoe served as President, eBay Marketplaces. From January 2000 to February 2005, Donahoe served as Worldwide Managing Director for Bain & Company, a global business consulting firm.  Donahoe serves on the board of Intel Corporation and on the Board of Trustees for Dartmouth College. Donahoe holds a B.A. in Economics from Dartmouth College and an M.B.A. from the Stanford Graduate School of Business.

24.     The term "Director Defendants" refers to Defendants Lepore, Andreessen, Ford, Omidyar, Schlosberg, Tierney, Moffett, Anderson, Barnholt, Cook, and Donahoe.

25.   The term "Individual Defendants" refers to the Director Defendants and Bourguignon.

## SUBSTANTIVE ALLEGATIONS

26.   Lepore is a director of eBay as well as a director of the NY Times.  Because eBay competes with the NY Times, Lepore is an interlocking director within the meaning of Section 8 and eBay and its Board members are in violation of Section 8.  Accordingly, Lepore should be enjoined from simultaneously serving as a board member of eBay and the NY Times, and eBay should be enjoined from further violations of Section 8.

**A.   eBay Competes with the NY Times**

27.   As described in greater detail below, eBay and the NY Times compete with one another in the areas of national, retail, and classified advertising.  Both companies derive substantial revenue from advertising, have contractual relationships with similar advertising clients (including at least one major advertising company – Google), and consider the health, quality and outlook of their sales of advertising to be a central component of their business model.  Both companies also derive substantial revenue from those seeking to sell a vast number of products, ranging from miscellaneous items to real estate.  Both companies derive a substantial and material amount of revenue from these areas of commerce and are competitors within the meaning of Section 8.

**1.   eBay's Business**

28.   For the year ended 2009, eBay reported total revenues of $8,727,362,000.  *See* eBay Annual Report for 2009, Form 10-K, filed Feb. 17, 2010, at 2 ("eBay Report 2009").  eBay has combined capital, surplus and undivided profits of approximately $13.7 billion.  *See id.,* at 81, 84.

29.   For most of 2009, eBay operated three primary business segments: Marketplaces,

Payments and Communications. eBay describes each business segment as follows:

(i)     <u>Marketplaces</u>: Provides the infrastructure to enable global online commerce on a variety of platforms, including the www.eBay.com platform and other online platforms, such as eBay's online classifieds businesses, secondary tickets marketplace (StubHub), online shopping comparison website (Shopping.com) and apartment listing service platform (Rent.com), as well as eBay's fixed price media marketplace (Half.com). *See* eBay Report 2009, at 1.

(ii)     <u>Payments</u>: Comprised of eBay's online payment solutions PayPal and Bill Me Later. *See* eBay Report 2009, at 1.

(iii)     <u>Communications</u>: Enabled Internet communications between Skype users and provided low-cost connectivity to traditional fixed-line and mobile telephones. *See* eBay Report 2009, at 1.  On November 19, 2009, eBay completed the sale of Skype and thus primarily operates in the Marketplaces and Payments business segments. *See id.*

30.     The services and products eBay offers include, among others, the following:

(i)     <u>Rent.com</u>:  According to eBay, Rent.com "is a leading U.S. listing website in the rental housing industry. The website is designed to bring apartment seekers and landlords together in an efficient manner. Landlords pay a fee to Rent.com for renters who indicate that they have found their apartments through Rent.com." eBay Report 2009, at 6.  According to a Deutsche Bank analyst report, dated April 22, 2010, eBay's total revenue for 2009 for rent.com was $74 million.

(ii)     <u>Classifieds Websites</u>:  According to eBay, "classifieds websites are available in over 1,000 cities around the world and are primarily designed to help people trade on a local level." According to eBay, "classified websites generate revenue primarily through advertising." eBay Report 2009, at 6.  Some of eBay's classifieds websites include Kijiji, which

is now ebayclassifieds.com.

     (iii)   <u>Online Advertising and Other Services</u>:  According to eBay, the Company offers "advertising service that enables third parties to directly purchase text advertising promoting their eBay listings and eBay stores."  eBay Report 2009, at 6.

    31.    eBay generates two types of "net" revenues: (i) net transaction revenues; and, (ii) marketing services and other revenues. eBay describes each type of net revenue as follows:

     (i)    net transaction revenues are derived principally from "listing fees" (the fee eBay charges someone to list their product for sale on eBay's website) and "final value fees" (the fees someone must pay when their product is actually sold on eBay's Marketplaces trading platforms), *see* How To Do Everything With Your eBay Business at 26 (McGraw-Hill 2003); fees paid by merchants for payment processing services; and, until the sale of Skype on November 19, 2009, fees charged to users to connect Skype's Internet communications products to traditional fixed-line and mobile telephones. *See* eBay Report 2009, at 1-2.

     (ii)    marketing services revenues are derived principally from the sale of advertisements, revenue sharing arrangements, classifieds fees and lead referral fees.  Other revenues are derived principally from interest earned on certain PayPal customer account balances, interest and fees earned on the Bill Me Later portfolio of receivables from loans and from contractual arrangements with third parties that provide services to our users. *See* eBay Report 2009, at 1-2.  For the year ended 2009, eBay reported that marketing services and other revenues represented 12% of the Company's total net revenues. *Id.* at 56.  For the first quarter 2010, marketing services and other revenues represented $256 million out of roughly $2 billion in total revenues, or just under 12%.  eBay Quarterly Report for the Quarter ended March 31, 2010, Form 10-Q, filed April 28, 2010, at 18.

    32.    According to eBay, the Company derives "significant revenue from advertising."

According to its eBay Report 2009:

> Revenues from online advertising are sensitive to events and trends that affect
> advertising expenditures, such as general changes in the economy and changes in
> consumer spending, as well as the effectiveness of online advertising versus
> offline advertising media and the value our websites provide to advertisers
> relative to other websites

eBay Report 2009, at 25. eBay has contractual relationships with, among others, "major

advertising companies such as Yahoo!, Google and Microsoft." *Id.* at 25.

33.    Over the course of a few days in April/May 2010, banners or displays appeared

on the eBay website, eBay.com – advertising the products or services of the following

companies: Progressive, Travelers, AT&T, Verizon, Optimum Online, Avis, Budget, Ford,

Lexus, Nordstrom, Helzberg Diamonds, UPS, NY Times, Fairmont, Hyatt, Weight Wachers,

Zipcar and Delta.

34.    According to a Deutsche Bank analyst report, dated April 22, 2010, eBay's total

advertising revenue for 2009 (not including classifieds) was $725,878,000.

35.    The Company is also subject to "vigorous competition in [its] businesses from

numerous sources" including, among others, "classifieds." eBay Report 2009, at 12. According

to the Company: "In many markets in which they operate, including in the U.S., our classified

platforms compete against more established online and offline classifieds platforms." *Id.* at 39.

36.    As reported in 2008, eBay estimated that about 82 million people visit its global

classifieds sites every month, generating 4.5 billion page views. *See* Scott Morrison, *EBay Plans

Classifieds Buyouts*, Wall St. J., Sept. 17, 2008. At the time, eBay's classifieds business was,

according to Jacob Aqraou, general manager of eBay's global classified business, the Company's

"fastest-growing business," generating roughly 5% to 10% of the Company's $7.7 billion total

revenue. *Id.* Indeed, for the quarter ended September 30, 2008, eBay's classifieds business

(Kijiji, now eBay Classifieds) generated $250 million in revenue, representing over 10% of the

Company's total quarterly revenue of $2.1 billion. *See* Erick Schonfeld, "As eBay's Core Business Hits Hard Times, Skype Begins to Shine," TechCrunch, Oct. 15, 2008.

37.   According to eBay.com:

- eBay Classifieds (formerly Kijiji) launched in the U.S. in 2007, and globally since 2004

- A local eBay Classifieds site is available in 272 areas across the U.S.

* * *

- eBay Classifieds attracts millions of unique visitors every month with hundreds of thousands of live listings to choose from

- eBay Classifieds has generated more than 1 billion page views since launch - more than three for every person living in the U.S.

- You'll find over 75,000 listings for cats and dogs ready for adoption or sale on eBay Classifieds

- Over 80,000 items are For Sale on eBay Classifieds - almost twice the number of Chicago Marathon runners in 2009

- There are over 90,000 cars and vehicles listed on eBay Classifieds - close to thirty cars for every county in the U.S.

- eBay Classifieds users post over 150,000 ads every month

*See* www.ebayclassifieds.com/m/about.

**2.   The NY Times**

38.   The NY Times is a New York corporation with headquarters located at 620 Eighth Avenue, New York, New York, 10018. For the year ended 2009, the NY Times reported revenues of $2,440,439,000. The New York Times Annual Report for 2009 (ending on Dec. 27, 2009), Form 10-K, filed Feb. 22, 2010, at 58 ("NY Times Report 2009"). The combined capital, surplus and undivided profits of the NY Times is approximately $607 million. *Id.* Both eBay and the NY Times engage in commerce and compete with one another in the sale of national, retail and classified advertising.

39.    The NY Times describes itself as a "diversified media company that currently includes newspapers, Internet businesses, investments in paper mills and other investments." NY Times Report 2009 at 1.

40.    The NY Times divides its business into two segments: (i) News Media Group; and, (ii) About Group.

(i)    News Media Group: This consists of three separate media groups:

(1)    The New York Times Media Group, which includes The New York Times, the International Herald Tribune, NYTimes.com and related businesses;

(2)    The New England Media Group, which includes The Boston Globe, Boston.com, the Worcester Telegram & Gazette, the T&G's Web site, Telegram.com and related businesses; and

(3)    The Regional Media Group, which includes 14 daily newspapers in Alabama, California, Florida, Louisiana, North Carolina and South Carolina, their Web sites, other print publications and related businesses.

(ii)    About Group: This consists of the Web sites About.com, ConsumerSearch.com, UCompareHealthCare.com and Caloriecount.com and related businesses. See NY Times Report 2009, at 1.

41.    A significant portion of the News Media Group's revenue is derived from advertising which is divided into three basic categories: national, retail and classified. According to the NY Times: "The Times had the largest market share in 2009 in advertising revenue among a national newspaper set that consists of USA Today, The Wall Street Journal and The Times." NY Times Report 2009, at 2. In 2009, the NY Times stated that it had a 50% market share of the national newspaper set in 2008. See id. at 3.

42.    According to the NY Times:

NYTimes.com derives its revenue primarily from the sale of advertising. Advertising is sold to both national and local customers and includes online display advertising (banners, large-format units, half-page units, interactive multimedia), classified advertising (help-wanted, real estate, automotive) and contextual advertising (links supplied by Google).

NY Times Report 2009, at 3.

43.     The New England Media Group sells "retail, classified and national advertising across multiple platforms, including print newspapers, online, broadcast and direct marketing vehicles, capitalizing on opportunities to deliver to national and local advertisers a broad audience in the New England region." NY Times Report 2009, at 4.

44.     Boston.com "primarily derives its revenue from the sale of advertising. Advertising is sold to both national and local customers and includes online display advertising, classified advertising and contextual advertising."  NY Times Report 2009, at 4.

45.     The About Group "generates revenues through cost-per-click advertising (sponsored links for which the About Group is paid when a user clicks on the ad), display advertising and e-commerce (including sales lead generation). Cost-per-click advertising, which in 2009 represented more than 50% of the About Group's revenues, is principally derived from an arrangement with Google under which third-party advertising is placed on the About Group's Web sites." NY Times Report 2009, at 5.

46.     The NY Times competes for advertising and consumers with "other media in their respective markets, including pay and free newspapers, Web sites, broadcast, satellite and cable television . . . ."  NY Times Report 2009, at 7.  Also, the NY Times states:  "as a result of the secular shift from print to digital media, all our newspapers increasingly face competition for audience and advertising from a wide variety of digital alternatives, including news and other Web sites, news aggregation sites and online classified services." *Id.*

47.     The NY Times faces "***substantial competition for advertisers and audiences***"

from, among others, "Web sites." NY Times Report 2009, at 9 (emphasis in original).

Moreover, the NY Times is keenly aware of the additional and increasing competition posed to

its advertising revenue from digital media:

> ***The increasing popularity of digital media and the progressing shift in
> consumer habits and advertising expenditures from traditional to digital media
> may adversely affect our revenues if we are unable to successfully grow our
> digital businesses.***
>
> Web sites and applications for mobile devices distributing news and other
> content continue to gain popularity. As a result, audience attention and advertising
> spending have shifted and may continue to shift from traditional media forms to
> the Internet and other digital media. We expect that advertisers will continue to
> allocate greater portions of their budgets to digital media, which can offer more
> measurable returns than traditional print media through pay for performance and
> keyword-targeted advertising. This secular shift has intensified competition for
> advertising in traditional media and has contributed to and may continue to
> contribute to a decline in print advertising.
>
> In addition, as audience attention is increasingly focused on digital media,
> circulation of our newspapers may be adversely affected, which may decrease
> circulation revenue and exacerbate declines in print advertising. If we are not
> successful in growing our digital businesses to offset declines in revenues from
> our print products, our business, financial condition and prospects will be
> adversely affected.

NY Times Report 2009, at 9 (emphasis in original).

48.     Over the course of a few days in April/May 2010, banner or display ads appeared

on www.nytimes.com for the products or services of the following companies: LL Bean, Fed Ex,

Neiman Marcus, Sotheby's, Siemens, Bank of America, Sovereign Santander Bank, Porsche,

Lufthansa, Cathay Pacific, and Delta.

49.     For 2009, NY Times' revenue from advertising alone amounted to

$1,336,291,000, out of total company-wide revenue of over $2.4 billion. *See* NY Times Report

2009, at 29 (emphasis in original). The percentage of revenues attributable to each segment for

2009 is as follows:

      (i)      The New York Times Media Group: 65%

      (ii)     The New England Media Group: 18%

      (iii)    The Regional Media Group: 12%

      (iv)    About Group: 5%

*See* NY Times Report 2009, at 24.

50.    Roughly 53% of the News Media Group's revenues in 2009 were from advertising. *See* NY Times Report 2009, at 25.

51.    For the first quarter of 2010, according to Janet Robinson – President and Chief Executive Officer of the NY Times – the company's print advertising, which decreased by 12%, was "offset in part by 11% growth in online advertising revenues." Transcript, The New York Times Company First Quarter 2010 Earnings Call, April 22, 2010. And for just the first quarter of 2010, Robinson stated that total revenue from the company's internet business was $90 million or 15% of the company's first quarter revenue. *See id.* Total internet advertising revenues for the first quarter of 2010 was $80 million. *See id.* Accordingly, as stated by Robinson:

> Online advertising revenues have become a much more significant part of our revenue mix and made up 26% of our advertising revenues in the first quarter, up from 20% in the same period in 2009.

*See id.*

52.    According to Jim Follo – Senior Vice President and Chief Financial Officer of the NY Times – display advertising, classifieds and cost per click advertising account for a substantial majority of the company's total online revenues. According to Follo: display advertising represented 53% of the total online revenue; classifieds represented 13% of the total online revenue; cost per click advertising represented 24% of the total online revenue; and, 10% came from other advertising sources (believed to be contextual advertising, *i.e.*, links supplied by Google). *See* Transcript, The New York Times Company First Quarter 2010 Earnings Call, April 22, 2010.

53.     For the year ended 2009, the News Media Group reported is classifieds in four segments: help wanted, real estate, auto and other.  NY Times Report 2009, at 31.  Classifieds generated $213,800,000 million in revenue in 2009, representing almost 9% of the NY Time's total annual revenue for 2009.  *Id.*

54.     Roughly 95% of the About Group's revenues in 2009 were from the sale of cost-per-click and display advertising.  Cost-per-click advertising accounted for 59% of the About Group's total advertising revenue in 2009.  *See* NY Times Report 2009, at 25.

55.     The digital business of the NY Times is very important to the NY Times and an aspect of its business that it seeks to grow as part of its overall business strategy:

> *Strengthening our digital businesses*
> Online, our goal is to grow our digital businesses by broadening our audiences, deepening engagement and monetizing the usage of our Web sites. We are pursuing a multiplatform strategy across the Company with new digital products and new platforms, such as mobile, social media networks and reader application products.
>      Our Internet businesses provide diversified advertising revenue. NYTimes.com benefits from the large national advertiser base that The Times brand attracts and About.com generates most of its revenues from cost-per-click and display advertising. Our goal for NYTimes.com is to continue to build a fully interactive news and information platform and to sustain our leadership positions in our most profitable content areas and verticals. We have made and expect to continue to make investments to grow those areas of our Web sites that have the highest advertiser demand. We are also focused on continuing to offer a premier environment for integrated brand advertising across platforms through online advertising product innovation and our integrated print and online sales structure. As we continue our transition from a company that operated primarily in print to one that is increasingly digital in focus and multiplatform in delivery, we expect that online advertising revenues will be a more important part of our mix. In 2009, Internet revenue accounted for 13.8% of our revenues, versus 12.0% in 2008.
>      Our research and development group also helps us monitor the changing media and technology landscape so that we can anticipate consumer preferences and devise innovative ways of satisfying them.

NY Times Report 2009, at 26.

## B.     The Competitive Sales of eBay and the NY Times Are Material

56.     As detailed above, eBay and the NY Times directly compete for the sale of

national, retail and classified advertising. Indeed, such sales are at the heart of their business model and the focus of their attention. This area of competition far exceeds the minimum threshold requirements outlined in Section 8. 15 U.S.C. § 19(a)(2)(A)-(C); *see supra* note 2. As a result, the exemptions laid out in Section 8 do not apply in this case.

57.    First, the competitive sales of eBay and the competitive sales of NY Times exceed $1 million (or as of January 19, 2010: $2,584,100). 15 U.S.C. § 19(a)(2)(A). That is based on the fact that both companies have annual revenues in the billions of dollars and derive a substantial portion of those revenues from the sale of national, retail and classified advertising. Accordingly, both companies exceed the $1 million requirement set forth in 15 U.S.C. § 19(a)(2)(A).

58.    Second, the competitive sales of eBay and the competitive sales of the NY Times exceed 2% of each company's total sales and 4% of at least one of the company's total sales. 15 U.S.C. § 19(a)(2)(B)-(C).

59.    With respect to eBay, the Company's classifieds business alone represents roughly 12% of the Company's total revenues. As eBay concedes, its classifieds business competes with traditional print as well as online classifieds. *See also* Pew Internet, "Online Classifieds," May 2009 (available at pewinternet.org). Moreover, classifieds represent an enormous segment of the online market: half of the suburban and urban online audience visit classified sites and on any given day about 10% of them visit a classified site. *Id.* The online classifieds business competes directly with, and is siphoning off business from, traditional print classifieds. *Id.* These competitive sales figures clearly exceed the threshold amounts. These competitive sales figures are increased when eBay's marketplace business as well as its national and retail advertising business (all of which compete with the NY Times) are included. Finally, given the important role that national, retail and classified advertising plays in eBay's overall

business model, revenue generated from these business segments not only exceed the minimum threshold requirements under Section 8 but are material to the Company's operations.

60.     With respect to the NY Times, the sale of national, retail and classified advertising represents the vast majority of its revenue, with classifieds alone representing almost 9% of the NY Time's total annual revenue for 2009. Accordingly, as alleged above, the NY Times easily satisfies the minimum threshold requirements.

61.     Specifically, analysts have reported that eBay's 2009 total advertising revenue (*i.e.*, banner ads, etc.; not classifieds) was $725 million, eBay's 2009 total revenue for rent.com was $74 million, and eBay's third quarter 2008 total revenue for classified advertising was $250 million (representing $1 billion on an annualized basis). The NY Times' total annual advertising revenues were over $1.3 billion and its total annual classified revenues were almost $214 million in 2009. The total actual competitive revenue amounts (as reported by eBay, the NY Times, and analysts), as well as the respective percentages of each company's total revenues, are summarized as follows:

|  | **eBay** | **NY Times** |
| --- | --- | --- |
| Total Revenue 2009 (000's) | $8,727,362 | $2,440,439 |
| Adverting Revenue (000's) [1] | $725,878 | $1,336,291 |
| Advertising Revenue as % of Total | 8.3% | 54.8% |
| Classified Revenue (000's) | $1,074,000 [2] | $213,800 |
| Classified Revenue as % of Total | 12.3% | 8.8% |

[1]     This does not include classified advertising
[2]     Estimate of Kijiji (eBayclassifieds.com) quarterly revenues annualized (*see* TechCrunch, Oct. 15, 2008) plus rent.com

62.     Both eBay and the NY Times have disclosed significant competition in the area of national, retail and classified advertising. Both have expressed a keen focus on internet advertising. Based on each company's business model and the representations they have made

about their future business plans as alleged herein, eBay and the NY Times will become even more competitive with each other, increasing their respective competitive sales both in dollar figures as well as a percentage of their total sales.

## C.  The Board Has Knowledge of the Antitrust Laws

63.   According to the Company's Code of Business Conduct and Ethics (available at www.eBay.com), the Company and its Board are aware of the prohibitions against conflicts of interest and violations of the antitrust laws:

### Conflicts of Interest

A conflict of interest occurs when, because of your role at eBay, you're in a position to influence a decision that may result in personal gain for you, your friends, or your family at the expense of eBay or the eBay community. A potential conflict of interest is a situation that is reasonably likely to evolve into an actual conflict of interest. An apparent conflict of interest is a situation where an observer might conclude that your judgment was influenced by something other than eBay's best interests. Each of us has a responsibility to ensure that our business dealings avoid these kinds of conflicts, which can undermine both our personal reputations and our collective reputation as a company that does business in an above-board, straightforward way.

The best rule for any conflict situation is "disclose and abstain" - if it is not possible to avoid participating in the outside activity creating the conflict, be open and honest with eBay about the possibility of a conflict and avoid participating in eBay decisions that might raise the conflict. It's not possible to list all possible conflicts, but some examples include:

**Outside Employment**
Avoid outside employment or business ventures that compete with eBay, conflict with your obligations to eBay, or otherwise compromise eBay's interests. You may provide services to eBay customers and suppliers if there is no conflict with your job responsibilities and your manager in consultation with a Business Ethics Officer approves the arrangement. You may provide services to other companies if there is no conflict of interest and your services do not interfere with your duties at eBay. (eBay officers must also get the prior written consent of a Business Ethics Officer).

**Board & Advisory Board Memberships**
Obtain the approval of your manager (and for eBay officers, a Business Ethics Officer) before taking a position on any board of directors, advisory board, or other body of any entity that may present an actual or potential conflict of interest. (In general, participation on the boards of family enterprises or non-profits will

not be controversial; other memberships will be considered on a case-by-case basis.)

\* \* \*

### Financial Interests
*Customers and Suppliers:*
You must disclose to your manager any investment or other interest you or any member of your household has in a competitor, customer, or supplier of eBay that is:

- a public company, if the value of that financial interest exceeds the higher of 10% of your annual base compensation or 0.2% of your net worth; or

- a private company, regardless of the size of the investment.

If you have any questions about whether a company is a customer or supplier, consult with a Business Ethics Officer.

Your manager may require you to abstain from working with the customer or supplier in the course of your job. In cases where your job requires involvement with the customer or supplier, you may be required to divest some or all of your investment. Managers are encouraged to consult with a Business Ethics Officer in evaluating potential conflicts and appropriate responses.

*Competitors:*
The same rules apply to your investments and interests in eBay's competitors, although in many cases it will not be possible for you to abstain from work relating to the competitor, and partial or full divestment will be necessary.

Because of the broad and evolving nature of eBay's business, it is not possible to provide a fixed list of competitors. Work with your manager and a Business Ethics Officer to determine whether a given company is a competitor of eBay and, if so, how to handle any investment. Factors in evaluating how to handle an investment may include the total amount of the investment, whether the company is private or public, whether the investment is liquid or illiquid, whether you held the investment before coming to eBay, whether the investment results from ordinary-course compensation to a spouse, what percentage of an your salary and net worth the investment constitutes, and your position and job responsibilities at eBay.

\* \* \*

### Antitrust & Competition

Antitrust and competition laws promote vigorous competition and foster a competitive marketplace where customers can obtain the highest quality goods and services at the lowest prices. As part of our goal of helping our community, we try to make our services better, faster, easier, safer and more cost effective.

Any conduct contrary to those goals - agreeing not to compete, dividing markets, fixing prices, or acting to harm our competitors or our community - may violate antitrust laws.

Those laws are complex and evolving, and are hard to boil down to a few clear rules. For a more comprehensive review of the laws and our policies in this area, see Antitrust Awareness. Check with Legal if you have any questions about whether something is appropriate.

Code of Business Conduct and Ethics at 2-3, 6.

64.     The Company has stated that its industry is "intensely competitive" and that it is subject to intense antitrust scrutiny and litigation. eBay Report 2009, at 39. According to the Company:

. . . other companies and government agencies have in the past and may in the future allege that our actions violate the antitrust or competition laws of the U.S. or other countries, or otherwise constitute unfair competition. Such claims, even if without foundation, typically are very expensive to defend, involve negative publicity and substantial diversion of management time and effort, and could result in significant judgments against us.

*Id.* at 41.

65.     For example, in March 2007, a purported antitrust class action lawsuit was filed against the Company in the Western District of Texas alleging that eBay and its wholly owned subsidiary PayPal "monopolized" markets through various anticompetitive acts and tying arrangements. The plaintiff alleged claims under sections 1 and 2 of the Sherman Act, as well as related state law claims.  In April 2007, the plaintiff re-filed the complaint in the U.S. District Court for the Northern District of California (No. 07-CV-01882-RS), and dismissed the Texas action.  In 2007, the case was consolidated with other similar lawsuits (No. 07-CV-01882JF). In June 2007, eBay filed a motion to dismiss the complaint. In March 2008, the court granted the motion to dismiss the tying claims with leave to amend and denied the motion with respect to the monopolization claims. The plaintiffs subsequently decided not to refile the tying claims. The plaintiffs' motion on class certification and eBay's motion for summary judgment were heard by

the court in December 2009. The Court granted eBay's motion for summary judgment. eBay

reported on this litigation in its annual report for 2009, eBay Report 2009 at 47-48, which was

signed by all of the Individual Defendants, *id* at 124.

66.     eBay and the Board have knowledge of allegations involving interlocking eBay

board members. In 2004, eBay purchased a minority stockholder interest in Craigslist.com, a

private company that has an online classifieds service business. *eBay Domestic Holdings, Inc. v.*

*Newmark*, Civil Action No. 3705-CC, 2009 Del. Ch. LEXIS 175 (Del. Ch. Oct. 2, 2009) (ruling

on partial summary judgment motion). eBay bought a 25% interest in Craigslist's common

stock. *Id.* at *1. By virtue of its share ownership, eBay was able to put one director on the board

of Craigslist. The first director was defendant Omidyar. (Omidyar was later replaced by other

eBay representatives on the Craigslist board). eBay then launched its own online classifieds

company, Kijiji.com, which was first introduced overseas, then brought to the United States in

2007. *Id.* at *1. (Kijiji.com was later renamed eBayclassifieds.com). Craigslist viewed the

domestic operations of Kijiji as competitive and took steps to coerce eBay to divest its interest in

Craigslist. *Id.* at 1. eBay filed suit against Craigslist in Delaware Chancery Court alleging a

variety of claims, including breach of fiduciary duty and corporate waste. *Id.* at *1. The action

went to a bench trial in December 2009. *See* Tom Hals, "Trial Leaves eBay, Craigslist with

plenty to regret," Reuters.com, Dec. 16, 2009.

67.     Craigslist later brought its own lawsuit against eBay in the Superior Court of the

State of California, County of San Francisco, entitled *craigslist, Inc., v. eBay Inc., et al.*, No.

CGC-08-475276 (Superior Court, California, May 13, 2008). Craigslist alleged that eBay

acquired a minority stake in Craigslist and put a director – defendant Omidyar – on its board to

learn about the online classifieds business to assist eBay's own online classifieds business.

Craigslist Complaint, ¶3. Paragraph 60 of the Complaint alleged that eBay sought to use its

board membership on Craigslist to thwart competition in the classified ads business:

> 60 . . . eBay, through its agents, currently operates the Kijiji.com website, which directly competes with craigslist in the Relevant Market, such that the elimination of competition by any agreement between eBay and craigslist would constitute a violation of the antitrust laws.  Nonetheless, eBay has had its agents serve as voting directors on the board of craigslist and, even after it started directly competing with craigslist, eBay attempted to place an eBay agent on the craigslist board.  eBay is thus seeking to have its agents simultaneously serve on the boards of eBay and craigslist – two corporations that are engaged in commerce and are competitors – and this joint representation has competitive significance in the Relevant Market.  The adverse effects on competition would be exacerbated by eBay's access to craigslist's proprietary information through its agent, and the agent's ability to participate in discussions and voting held by the craigslist board.  These acts and conduct, coupled with the acts and conduct alleged above in this Complaint, have had (and, if not stopped, will likely have) the effect or the incipient effect of substantially lessening competition in the Relevant Market.  They have caused (and, if not stopped, will likely cause) substantial injury to consumers, competitors, and others.  eBay's acts and conduct amount to unfair competitive practices; they are against public policy because of their dangerous tendency to unduly hinder competition; and they lessen fair competition through predatory, restrictive, deceitful and/or otherwise oppressive conduct.  Upon information and belief, these practices are motivated by an anticompetitive intent or purpose, and not by any legitimate independent business reason. ***The acts and conduct conflict with the policy and spirit of the antitrust laws, including Section 8 of the Clayton Act (15 U.S.C. § 19); and their effects are comparable to those caused by a violation of the antitrust laws . . . .***

*Id.* at 2-3, 17-18 (emphasis added).  eBay was served with the Complaint, and amendments to it, and answered the allegations.  The lawsuit was highly publicized and is known to the eBay Board.  *See, e.g.,* "Craigslist sues eBay, alleges corporate spy plan," Reuters.com, dated May 13, 2008; "Craigslist sues Ebay, alleges unfair practices," Los Angeles Times, May 14, 2008.

68.     Accordingly, the Board is well aware of the problems of interlocking directors and of Section 8's prohibition against them.

**D.      The Director Defendants Nominated and Endorsed an Illegal Interlocking Director**

69.     On or about March 19, 2009, eBay disseminated to its shareholders and filed with the SEC a definitive proxy on Form DEF14A (the "2009 Proxy").

70.     On or about March 19, 2010, eBay disseminated to its shareholders and filed with

the SEC a definitive proxy on Form DEF14A (the "2010 Proxy").

71.    The Company's Board is divided into three classes, with individuals in each class

serving a single three-year term.

72.    The term of office for Board members in the first class of directors expires at the

Company's 2011 annual shareholder meeting.  The Board members in the first class includes:

Anderson, Banholt, Cook and Donahoe.

73.    The term of office for Board members in the second class of directors expires at

the Company's 2012 annual shareholder meeting.  The Board members in the second class

includes: Andreessen, Ford, Lepore and Omidyar.

74.    The term of office for Board members in the third class of directors expires at the

Company's 2013 annual meeting.  The Board members in the third class includes: Moffett,

Schlosberg and Tierney.[3]

75.    On or about March 19, 2009, eBay disseminated the 2009 Proxy to its

shareholders seeking their vote on, among others, the election of directors.  The 2009 Proxy

indicated that the Company's Corporate Governance and Nominating Committee (the

"Nominating Committee") – which consisted at the time of Defendants Lepore, Cook,

Schlosberg and Tierney – makes recommendations to the Board of Directors on potential Board

members.  Based on the Nominating Committee's role, the Nominating Committee

recommended to the Board that Defendants Lepore, Andreessen, Ford, Omidyar and Schlosberg

---

[3] As disclosed in the Company's Form 8-K filed with the SEC on February 1, 2010, Bourguignon, who was a member of the third class and whose term expired at the Company's annual meeting of shareholders on April 29, 2010, decided not to stand for re-election. At a meeting of the Board held in March 2010, the Board determined to move one director from the second class to the third class to achieve a more equal balance of membership among the directors. Accordingly, in March 2010, Schlosberg agreed to resign as a director for the second class, and was immediately reappointed to the Board as a director for the third class. Schlosberg continues to serve on the Company's Audit Committee and Corporate Governance and Nominating Committee.

be nominated for re-election.

76.     According to the 2009 Proxy, the Board nominated five individuals for election to the Board: Lepore, Andreessen, Ford, Omidyar and Schlosberg.  All five nominees were pre-existing Board members serving in the Board's second class of Directors and whose directorships expired at the Company's annual shareholder meeting on April 29, 2009.

77.     The 2009 Proxy included a recommendation from the Board that eBay shareholders vote "FOR" the Board's nominees:

**THE BOARD OF DIRECTORS RECOMMENDS
A VOTE IN FAVOR OF EACH NAMED NOMINEE.**

78.     *Id.* at 18.  In nominating and recommending Lepore for reelection, the Board and its members intentionally violated Section 8 and/or  recklessly or with gross negligence failed to inform themselves of the facts regarding compliance with Section 8.

79.     On or about April 29, 2009, the Company held its annual shareholder meeting wherein the Board's slate of nominees – including Lepore – were re-elected to the Board for a three-year term.  *See* eBay Form 8-K, filed May 1, 2009.

80.     On or about March 19, 2010, eBay disseminated the 2010 Proxy to its shareholders seeking their vote on, among others, the election of the third class of director nominees: Moffett, Schlosberg and Tierney.  According to the 2010 Proxy, the Board of directors recommended their re-election.  In fact, the 2010 Proxy stated that:

> The Board concluded that Mr. Schlosberg should continue to serve as a director of eBay in part due to his experience as a Chief Executive Officer in the newspaper/publishing industry, which is particularly relevant to eBay's classifieds business . . . .

2010 Proxy at 18.

81.     On or about April 29, 2010, at the Company's annual shareholder meeting, all three nominees were re-elected to the Board.  *See* eBay Form 8-K, filed April 30, 2009.

82.   No action has been taken by the Company or its Board to cure the illegal nomination of Lepore or to remove Lepore from the Board or from the board of the NY Times.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

83.   Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress Defendants= violation of Section 8 and their breaches of fiduciary duties.

84.   Plaintiff owns eBay common stock.

85.   Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

86.   The eBay Board currently consists of the eleven (11) Director Defendants.

87.   All eleven of the Director Defendants committed a void and *ultra vires* act when they nominated and endorsed for Board membership an interlocking director in violation of Section 8. This nomination and endorsement is a per se violation of the U.S. antitrust laws. It was beyond the authority of any board of directors and cannot be ratified by the Company's shareholders. In addition, the Director Defendants continue to violate Section 8 because they continue to allow Lepore to remain on the eBay Board. Accordingly, in these circumstances – when allegations of *ultra vires* board action have been made – the law of the state of Delaware clearly states that a pre-suit demand "will be excused if a majority of the board that allegedly pursued the *ultra vires* action remains on the defendant board at the time demand is made." *In re InfoUSA, Inc.*, 953 A.2d 963, 988 (Del. Ch. 2007).

88.   Because a majority of the Board (indeed, the entire Board) committed these *ultra vires* acts, a pre-suit demand is excused and no further analysis or allegation concerning Defendants' wrongdoing, mental state or culpability is required to excuse such pre-suit demand. Nevertheless, it is clear that the Director Defendants were knowingly and/or recklessly indifferent to their Section 8 violations and acted with intent, gross negligence and/or bad faith

when they nominated and endorsed an illegal interlocking director to serve on the Board.
Evidence of Defendants' culpable wrongdoing is substantial:

     a)    First, the board knowingly and intentionally nominated an individual that simultaneously sits on the board of a competing company. Indeed, the Director Defendants knew that Lepore sits on the board of the NY Times and that the NY Times competes with eBay. That knowledge is based on the Company's own public filings which indicate that Lepore is a sitting director of the NY Times which engages in businesses that materially competes with eBay.

     b)    Second, the board is fully familiar with the antitrust laws, and in particular, with the prohibition against interlocking directorships. eBay sued Craigslist over issues involving their interlocking director in a high-profile, Delaware action. And the Company was then sued by Craigslist in a high-profile action involving defendant Omidyar for allegedly engaging in conduct constituting a violation of Section 8 and for which the Company was named as a defendant.

     c)    Third, in evaluating candidates for nomination to the Board, the Director Defendants failed to consider a fundamental question: whether the prospective nominee complies with the U.S. antitrust laws prohibiting interlocking directors. Indeed, the stated criteria which the Director Defendants applied to the nomination process did not include an analysis of whether the nominees are illegal interlocks or whether their nomination even comports with applicable federal law. As a result, the Director Defendants failed to properly inform themselves of the propriety of their actions.

     d)    Fourth, by nominating an illegal interlocking director, the Director Defendants failed to abide by their duty of loyalty to act solely in the best interest of the Company. The Director Defendants failed to address the inherent conflict of interest that arises

when one individual serves on the boards of two or more competing companies. By doing so, they not only violated their duty of loyalty, but their own Code of Business Conduct and Ethics which prohibits illegal and anti-competitive behavior.

        e)      Fifth, when nominating and recommending Schlosberg to serve as a director, the Board conceded that it was recommending him, in part, because of his past experience as an executive in the newspapers/publishing industry, experience which the Board concluded was "particularly relevant to eBay's classifieds business." By doing so, the Board conceded its keen interest in the classifieds business and placing on the Board individuals with knowledge of the classifieds business of the newspaper industry. By nominating, endorsing and retaining Lepore, the Board was thus knowingly placing on the Board an individual who interlocked with a premier player in the newspaper industry with a competing classifieds business.

89.      In light of the foregoing, a pre-suit demand is excused.

**COUNT ONE**

**VIOLATION OF SECTION 8 OF THE CLAYTON ACT**
**(Against All Defendants)**

90.      Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

91.      Section 8 of the Clayton Act, 15 U.S.C. § 19, prohibits a person from serving, at the same time, as a director or officer of two or more corporations, other than banks, banking associations, and trust companies if: (1) the combined capital, surplus and undivided profits of each of the corporations exceeds $10,000,000 (or as of January 19, 2010, $25,841,000); (2) each corporation is engaged in commerce; and, (3) the corporations are competitors. eBay and the NY Times meet these statutory requirements and none of the exemptions from Section 8 apply here.

92.      Lepore currently serves as a director of both eBay and the NY Times and is in violation of Section 8 because:

a)   eBay and the NY Times each have a combined capital, surplus and undivided profit exceeding $25,841,000.

b)   eBay and the NY Times are each engaged in commerce.

c)   eBay and the NY Times are competitors, such that the elimination of competition by agreement between them would constitute a violation of any of the antitrust laws. Pursuant to 15 U.S.C. § 26, Lepore should be enjoined from continuing to serve on the boards of both companies, namely eBay and the NY Times.

93.   eBay and the NY Times exceed the statutory minimums contained in 15 U.S.C. § 19(a)(2)(A)-(C) in that: (a) the competitive sales of each of the two corporations is greater than $1,000,000 (or as of January 19, 2010, $2,584,100); (b) the competitive sales of each of the two corporations is greater than 2% of each corporation's total sales; and, (c) the competitive sales of at least one of the four corporations is greater than 4% of that corporation's total sales.

94.   The Court should: (i) issue an injunction requiring the eBay Board to remove Lepore from the Board, or to otherwise cure the present violation of Section 8; (ii) enjoin Lepore from continuing to serve on the eBay Board; or, (iii) enjoin eBay and/or the eBay Board (as presently constituted and as it may be constituted in the future) from committing future violations of Section 8 because, for the reasons stated above, there is a strong likelihood of continued violations of Section 8.

## COUNT TWO

### BREACH OF FIDUCIARY DUTY
### (Against All Defendants)

95.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

96.   As alleged herein, each of the Individual Defendants had a fiduciary duty to, among other things, exercise good faith and loyalty to ensure that eBay was operated in a diligent, honest and prudent manner and complied with all applicable federal laws.

97.     The Individual Defendants knowingly and/or recklessly, and in violation of their duty of loyalty, violated Section 8 when they nominated and endorsed for re-election Lepore to the eBay Board. In doing so, the Individual Defendants breached their fiduciary duties under Delaware law to eBay and its shareholders, namely, the duties of due care, good faith, candor, and loyalty.

98.     Furthermore, despite their actual knowledge of the Company's improper business practices and violations of law, the Individual Defendants have made no effort to correct the problems and have thus allowed Lepore to continue to serve on the Board in violation of Section 8. The Individual Defendants have thus abdicated their fiduciary duty of good faith.

99.     As a direct and proximate result of the Individual Defendants' breaches of fiduciary duties, they have violated and caused the Company to violate Section 8. The eBay Board should be enjoined from violating Section 8. Alternatively, the Court should enjoin Lepore from continuing to serve as a director on the eBay Board. The Court should issue an injunction requiring the eBay Board to remove Lepore from the eBay Board, or to otherwise cure the present violation of Section 8. The Court should also issue an injunction barring the eBay Board (as presently constituted and as it may be constituted in the future) from all future violations of Section 8 because, for the reasons stated above, there is a strong likelihood of continued violations of Section 8.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands:

A.     That the eBay Board (as presently constituted or as it may be constituted in the future) be preliminarily and permanently enjoined such that the Board is directed to remove the subject interlock or otherwise cure the violation by requiring Lepore to resign from the eBay Board. Alternatively, Plaintiff demands that the Court enjoin Lepore from continuing to serve as

a director on the board of the NY Times.

      B.      That the Defendants be preliminarily and permanently enjoined from future violations of Section 8 and that the eBay Board be ordered to establish a procedure whereby future elections and appointments of officers and directors in violation of Section 8 are identified and restricted.

      C.      That the Court award Plaintiff the cost of this suit, including reasonable attorneys' fees as authorized under 15 U.S.C. § 26 and the common law, and

      D.      That the Court order such other and further relief as may appear necessary and appropriate.

Dated: <u>May 27, 2010</u>

                         */s/ John V. Work*
                         John V. Work, Esq. (#4666)
                         **LAW OFFICE OF JOHN V. WORK P.A.**
                         800 N. King St., Ste. 303
                         Wilmington, DE 19801
                         T: 302-540-8747
                         F: 302-397-2091

                         **SARRAF GENTILE LLP**
                         Ronen Sarraf, Esq.
                         Joseph Gentile, Esq.
                         116 John Street, Suite 2310
                         New York, New York 10038
                         T: 212-868-3610
                         F: 212-918-7967

                         **VIANALE & VIANALE LLP**
                         Kenneth J. Vianale, Esq.
                         2499 Glades Road, Suite 112
                         Boca Raton, Florida 33431
                         T: 561-392-4750
                         F: 561-392-4775

                         ***Counsel for Plaintiff***

## <u>Verification</u>

Pursuant to 28 U.S.C. § 1746 and the requirements of Federal Rule of Civil Procedure 23.1, the undersigned verifies under penalty of perjury that the statements set forth in the foregoing pleading are true and correct to the best of his knowledge.

Date: __5/18/10__

By: _Robert F. Booth_
Robert F. Booth Trust