IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE EBAY, INC, DERIVATIVE :
LITIGATION :
 :
 : Civ. No. 10-470-LPS
 :
This Document Relates to: :
ALL ACTIONS :

## MEMORANDUM OPINION

John V. Work, LAW OFFICES OF JOHN V. WORK P.A., Wilmington, DE; Kenneth J. Vianale, VIANALE & VIANALE LLP, Boca Raton, FL; Ronen Sarraf, Joseph Gentile, SARRAF GENTILE LLP, New York, NY,

    Attorneys for Plaintiff;

William M. Lafferty, Ryan D. Stottmann, Pauletta J. Brown, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE,

    Attorneys for Individual Defendants and nominal Defendant eBay;

Edward D. Hassi, New York, NY; Thomas P. Brown, San Francisco, CA, O'MELVENY & MYERS LLP,

    Attorneys for nominal Defendant eBay.

September 2, 2011
Wilmington, DE

*[signature]*

**STARK, U.S. District Judge:**

This shareholder securities lawsuit presents issues regarding federal antitrust laws and demand futility. Pending before the Court is the individual defendants' motion to dismiss the complaint for failure to state a claim on which relief may be granted. (D.I. 11; *see also* C.A. No. 10-471-LPS D.I. 8) For the reasons that follow, the Court will grant the motion.

## I.  BACKGROUND[1]

Plaintiff Robert F. Booth Trust ("Plaintiff"), a shareholder of eBay, Inc. ("eBay" or "the Company") at all relevant times, initiated the instant lawsuit on May 28, 2010.[2] (D.I. 1 at 4) In the complaint, Plaintiff names the individual members of eBay's board of directors as defendants.[3] (D.I. 1 at 4-11) The complaint is styled as a derivative action on behalf of the Company and also lists eBay as a nominal defendant. (D.I. 1 at 4) The complaint alleges that by renominating Dawn Lepore, a long-time eBay board member, to serve another term on the Company's board of directors, in full knowledge that Lepore was serving simultaneously on the board of directors of the New York Times Company ("NY Times"), eBay's board of directors

---

[1] On a motion to dismiss, the Court must accept all factual allegations contained in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994).

[2] On the same day, a separate lawsuit was filed in this District against the same defendants by a different plaintiff, Ronald Gross. *See* C.A. No. 10-471-LPS. The two cases raised identical issues, and the parties subsequently agreed to consolidate them. (C.A. No. 07-471-LPS D.I. 18) All references to the docket index in this Memorandum Opinion are to C.A. No. 07-470-LPS, unless otherwise noted.

[3] The individual defendants are: Fred D. Anderson, Marc L. Andreessen, Edward W. Barnholt, Phillipe M. Bourguignon, Scott D. Cook, John J. Donahoe, William C. Ford, Jr., Dawn G. Lepore, David M. Moffett, Pierre M. Omidyar, Richard T. Schlossberg, and Thomas J. Tierney. (D.I. 1)

1

violated § 8 of the Clayton Act, which prohibits directors of one company from serving on the board of a competing company. *See* 5 U.S.C. § 19 (2006).

A.  **The Businesses**

eBay, a Delaware corporation with its headquarters in California, was founded by Pierre Omidyar – also a named defendant – in 1995 as a place to "sell virtually everything under the sun." (D.I. 12 at 4) Since 1995, eBay has expanded to become "the world's largest online marketplace, where practically anyone can buy and sell practically anything." (D.I. 1 at 2; *id.* at 6) eBay divides its business model into two primary segments: Marketplaces and Payments.[4] (D.I. 12 Ex. A at 1) The Marketplaces component includes eBay's main website, ebay.com, along with several other websites, including the Company's "online classifieds businesses." (*Id.*) According to eBay, its classifieds websites are available in over 1,000 cities worldwide and generate revenue primarily through advertising. (D.I. 1 at 12)

eBay's principal sources of revenue may also be divided into two categories. First, eBay generates income from transaction fees – fees charged to customers for listing items on one of the Company's Marketplace platforms (such as ebay.com). (D.I. 12 Ex. A at 1) The other major source of eBay revenue comes from marketing services: "the sale of advertisements, revenue sharing arrangements, classifieds fees and lead referral fees." (*Id.* at 2) According to eBay, the Company generates "significant revenue from advertising" and recognizes that these revenues are sensitive to "the effectiveness of online advertising versus offline advertising media." (D.I. 12 Ex. A at 25)

---

[4]eBay's business model previously included a "Communications" component, which consisted essentially of Skype. In November 2009, eBay sold Skype and eBay no longer considers Communications as part of its business. (D.I. 12 Ex. A at 1)

2

NY Times is not a party to this litigation. Nevertheless, the crux of this case involves aspects of NY Times' business and the degree to which eBay and NY Times compete with one another. NY Times, which began circulating newspapers in 1851, publishes eighteen print newspapers including, among others, *Boston Globe*, *International Herald Tribune*, and *New York Times*. (D.I.12 at 4) NY Times describes its itself as a "diversified media company that currently includes newspapers, Internet businesses, investments in paper mills, and other investments." (D.I. 12 Ex. B at 1)

NY Times has developed an online presence. In addition to online versions of its newspapers, NY Times has expanded into other online outlets, including its "About Group," which includes About.com and ConsumerSearch.com. (*Id.*; *see also* D.I. 1 at 16) According to NY Times, "[a] significant portion" of its revenue is "derived from advertising sold in its newspapers and other publications and on its Web sites." (D.I. 12 Ex. B at 2) NY Times divides its advertising into three basic categories: national, retail, and classifieds. (*Id.*)

Both eBay and NY Times view competition in advertising as a major risk factor to the continued success of their business. eBay, for example, notes in its SEC filings that the effectiveness of "online advertising versus offline advertising media" is a risk factor for the continued success of the Company's business. (D.I. 12 Ex. A at 25) eBay explains that another risk factor is "the value [eBay's] websites provide to advertisers relative to other websites." (*Id.*) Likewise, NY Times considers internet advertisers as major competitors of its printed product. According to NY Times, its "media properties and investments compete for advertising" from, among other things, "websites." (D.I. 12 Ex. B at 7) In addition, "as a result of the secular shift from print to digital media, all [their] newspapers increasingly face competition for audience and

advertising from a wide variety of digital alternatives." (*Id.*)

## B. The Allegedly Interlocking Director

Dawn Lepore, a named defendant in this action, has been CEO of drugstore.com since October 2004. Prior to that, she held various senior executive positions at Charles Schwab Corporation. (D.I. 1 at 4) Lepore joined the eBay board of directors in 1999 and has served continuously on the board since then. (D.I. 24 at 4) In 2008, Lepore was elected to the board of directors of NY Times. (D.I. 12 at 5)

On March 19, 2009, eBay disseminated its proxy statement in advance of the Company's annual stockholder meeting, which was set for April 29, 2009. (D.I. 12 Ex. C at 1) The proxy statement re-nominated Lepore to serve on eBay's board and explicitly noted that Lepore served on the board of directors of NY Times. (*Id.*) At eBay's April 29, 2009 stockholder meeting, eBay's stockholders elected Lepore to serve another term on eBay's board.

## C. eBay's Lawsuit with craigslist

eBay is involved in separate litigation that Plaintiff submits is relevant to the instant motion. In 2004, eBay purchased an approximately twenty-five percent security interest in craigslist, Inc. ("craigslist"). (D.I. 1 at 3) craigslist is a closely-held company whose sole business is an online classifieds service. By virtue of eBay's ownership interest, eBay was able to gain a seat on the craigslist board of directors – which was initially filled by Omidyar, the founder of eBay, and subsequently by other eBay representatives. (D.I. 24 at 3)

In 2005, eBay launched its foray into the online classifieds market by starting a website, Kijiji, which is now known as ebayclassifieds.com. (D.I. 1 at 26) Eventually, craigslist took steps to unseat eBay's representative from its board of directors. (D.I. 24 at 3) eBay

subsequently filed suit in an attempt to protect its seat on craigslist's board of directors. *See eBay Domestic Holdings, Inc. v. Newmark*, 16 A.3d 1 (Del. Ch. 2010). In that suit, the Delaware Court of Chancery found that craigslist's board did not breach its fiduciary duties when it implemented a staggered board to prevent eBay from having a seat on craigslist's board of directors. *See id.* at 40-41. The Court noted, "[e]vidence in this case suggests that eBay liberally passed nonpublic craigslist information around within eBay's departments. . . . It even appears that eBay used some of craigslist's nonpublic information to develop Kijiji." *Id.* at 41 n.134. eBay and craigslist are currently involved in pending litigation relating to whether eBay's misuse of its seat on craigslist's board conflicted with the "policy and spirit" of applicable antitrust laws. (D.I. 24 at 4; *see also craigslist, Inc. v. eBay Inc., et al.*, No. CGC-08-475276 (Cal. Super. Ct. 2009))

### D. Plaintiff's Lawsuit

Count One of Plaintiff's complaint alleges that eBay and NY Times are competitors and, therefore, Lepore's service on both boards of directors constitutes a violation of § 8 of the Clayton Act. (D.I. 1 at 32) Count Two of Plaintiff's complaint alleges that, by distributing the proxy statement that recommended that the shareholders vote for Lepore, which in Plaintiff's view was a violation of federal antitrust laws, eBay's board of directors violated their fiduciary duty of loyalty. (*Id.* at 33)

On August 16, 2010, eBay filed the instant motion to dismiss for failure to state a claim for relief, pursuant to Rules 12(b)(6) and 23.1(b)(3) of the Federal Rules of Civil Procedure. Briefing was completed on November 15, 2010. (D.I. 12; D.I. 24; D.I. 26) The Court heard oral argument on the motion on April 12, 2011. (D.I. 34, hereinafter "Tr.")

## II. <u>LEGAL STANDARDS</u>

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)). While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Twombly*, 127 S. Ct. at 1974. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Technology Charter School Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). Nor is the Court obligated to accept as true "bald assertions," *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co.*,

113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

### III. DISCUSSION

Plaintiff's lawsuit is predicated on a violation of federal antitrust laws: Plaintiff argues that NY Times and eBay are competitors, making Lepore's service on both eBay's and NY Times' boards of directors a violation of § 8 of the Clayton Act, which prohibits a person from serving on the boards of two companies that are in competition with one another.[5] eBay asserts that Plaintiff's complaint should be dismissed for two reasons. First, eBay argues that Plaintiff fails to meet the standard to excuse demand in derivative lawsuits. Next, eBay disputes that Lepore's dual service on the two boards of directors constitutes a violation of § 8 as a matter of law. If Plaintiff fails to meet his burden on either of these issues, the Court must dismiss the complaint.[6]

#### A. Demand Futility

Plaintiff purports to bring a derivative suit against the individual members of eBay's board of directors. *See generally Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000) (explaining

---

[5] The statute provides, in relevant part, "No person shall, at the same time, serve as a director or officer in any two corporations . . . that are . . . engaged . . . in commerce . . . [and] by virtue of their business and location of operation, competitors, so that the elimination of competition by agreement between them would constitute a violation of any of the antitrust laws . . . ." 5 U.S.C. § 19(a)(1) (2006).

[6] The parties raise a peripheral issue about standing under the Clayton Act. eBay asserts that Plaintiff's suit must be derivative because Plaintiff does not have standing to pursue a direct Clayton Act violation. (D.I. 12 at 15 n.9) Plaintiff responds he is proceeding derivatively on behalf of eBay, so he has standing regardless of whether he can prove any "antitrust injury." (D.I. 24 at 14 n.7) Given the Court's ruling on demand futility, the Court need not resolve the antitrust injury dispute.

derivative suits as involving "personal liability of the directors of a Delaware corporation to the corporation"). Derivative suits require a plaintiff to satisfy the requirements of Federal Rule of Civil Procedure 23.1.

Rule 23.1 provides that, when a shareholder pursues a derivative suit against a corporation, the complaint must:

> (3) state with particularity:
>
> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
>
> (B) the reasons for not obtaining the action or not making the effort.

Rule 23.1 thus imposes a requirement that a shareholder plaintiff make a pre-suit demand on the board of directors before pursuing a derivative suit on behalf of the corporation. The demand requirement allows the corporate machinery to correct problems itself and to safeguard against frivolous lawsuits. *See Ryan v. Gifford*, 918 A.2d 341, 352 (Del. Ch. 2007) (stating that demand requirement works to curb frivolous lawsuits, which may distract management with litigation and diminish board's authority to govern corporate affairs).

When it is clear that making a demand on the corporation's board of directors would be futile, courts excuse the demand requirement.[7] *See Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984) (laying out standard for demand futility). Under *Aronson* and its progeny, in order to excuse the demand requirement, Plaintiff must allege particularized facts creating a "reasonable

---

[7]Since eBay is a Delaware corporation, Delaware law governs the analysis of whether to excuse demand. *See generally Kamen v. Kemper Fin. Servs.*, 500 U.S. 90 (1991).

8

doubt" that: (1) the directors were disinterested and independent; or (2) the challenged transaction was the product of a valid exercise of business judgment. *Aronson*, 473 A.2d at 815; *see also Brehm*, 746 A.2d at 256. If either prong is satisfied, then a plaintiff has met the demand futility burden and the demand requirement is excused. *See In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d 165 (D. Del. 2009) (explaining that *Aronson* test is disjunctive). If Plaintiff does not satisfy the first prong of *Aronson*, there is a presumption that the Board's actions were the product of a valid exercise of business judgment. *See Beam v. Stewart*, 845 A.2d 1040, 1049 (Del. 2004); *see also In re Intel*, 621 F. Supp. 2d at 170.

Here, Plaintiff does not seriously contest the first prong, the independence and disinterestedness of the board. Plaintiff has not, for example, alleged any facts that would give rise to a reasonable inference that a majority of the board had a financial interest in renominating Lepore to serve on eBay's board. Likewise, Plaintiff does not argue that a majority of the board is controlled or dominated by another (or by extraneous considerations or influences). *See, e.g., Orman v. Cullman*, 794 A.2d 5, 23-24 (Del. Ch. 2002) (discussing first prong of *Aronson*). Hence, as Plaintiff conceded at oral argument, the demand futility analysis in this case does not involve the first prong of *Aronson*. (Tr. at 23)

Turning to the second prong of *Aronson*, Plaintiff submits that the challenged transaction is not the product of the valid business judgment of the board. Under the second prong of *Aronson*, "plaintiffs must plead particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 824 (Del. Ch. 2005). Put differently, Plaintiff must plead facts from which one

could reasonably infer that the board's decision to renominate Lepore was in bad faith, could not be attributed to any rational business purpose, or reached by a grossly negligent process. *See generally In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 52 (Del. 2006).

Plaintiff advances essentially three arguments that demand is excused under the second prong of *Aronson*. Plaintiff first contends that Lepore's nomination to the board was "per se illegal" and could not have been the product of a valid business judgment. (D.I. 24 at 7) Second, Plaintiff argues that the decision to renominate Lepore was *ultra vires* and, therefore, completely outside the purview of the business judgment rule. (*Id.* at 8-9) Third, Plaintiff asserts that the board's actions were taken knowingly and in bad faith; that is, Plaintiff argues that the board violated § 8 "intentionally to give eBay the competitive benefit of an improper interlocking directorship."[8] (*Id.* at 12)

eBay responds that the complaint fails to allege that if Plaintiff had made a demand, the board would not have been able to impartially consider whether Lepore's service on the two boards was appropriate. (D.I. 12 at 11) eBay also argues that the complaint says nothing about what the board may or may not have considered in reaching its decision to renominate Lepore. (*Id.* at 10) In eBay's view, Plaintiff here needs to allege facts that raise a reasonable inference

---

[8]Plaintiff seeks to excuse demand based, in part, on statements made in the Company's brief supporting its motion to dismiss. (D.I. 24 at 12) In its brief, eBay states: "Plaintiff does not and cannot allege facts to sustain his antitrust claim." (D.I. 12 at 1) From the use of the word "cannot," Plaintiff contends that "the board has apparently already determined that there is no Section 8 violation claim to be brought." (D.I. 24 at 13) Thus, according to Plaintiff, the board is not open-minded to the possibility of a Section 8 violation – and, therefore, is not independent and cannot be trusted to address any potential Clayton Act violations. The Court disagrees with Plaintiff's position. Arguments made in a brief are not evidence. Plaintiff's reliance on *Klein v. Broadhead*, 2004 U.S. Dist. LEXIS 919, at *42, *74 (S.D. Fla. Jan 20, 2004) – in which a defendant corporation had made statements in its public filings about the merits of its defenses in a litigation – does not persuade the Court to the contrary.

that the directors knew (or believed) that nominating Lepore to the board constituted a violation of § 8. (*Id.* at 11-13) eBay contends that the combined allegations that the board *knew* of § 8 of the Clayton Act and renominated Lepore to serve on the board, knowing that she served simultaneously on the board of NY Times, does not support an inference that the board *intended* or *knew* that it was violating federal antitrust laws. (*Id.* at 13-15) eBay points out that, "aside from Plaintiff, no one appears to believe that simultaneous service on the boards of eBay and NY Times poses a problem under Section 8 of the Clayton Act."[9] (*Id.* at 14) Moreover, eBay submits that acts ultimately found to be unlawful may nevertheless be protected by the business judgment rule – and by extension, the second prong of *Aronson* – so long as such acts were taken in good faith and on an informed basis. (D.I. 26 at 3)

As a general matter, the second step of the *Aronson* analysis is directed to "extreme cases," in which the board's decision is so "curious" that it could constitute "gross negligence." *See* Edward P. Welch & Andrew J. Turezyn, *Folk on the Delaware General Corporation Law* § 327.4.2.5 (2007 ed.) (explaining test under second *Aronson* prong as "necessarily high" and "stringent"). Additionally, when conducting a demand futility analysis under the second prong of *Aronson*, the question, by its nature, involves an "inquiry into the substantive nature of the challenged transaction and the board's approval thereof." *Melzer v. CNET Networks, Inc.*, 934 A.2d 912, 919 (Del. Ch. 2007). *Aronson* and its progeny make clear that "the entire review is factual in nature" and that "[r]easonable doubt must be decided by the trial court on a case-by-case basis employing an objective analysis." *Aronson*, 473 A.2d at 815; *see also*

---

[9] For example, eBay points out that regulators, despite clearly being aware of Ms. Lepore's dual service on both boards, have not taken any enforcement action. (D.I. 12 at 14 n.6)

11

*Grobow v. Perot,* 539 A.2d 180, 186 (Del. 1988), *overruled on other grounds by Brehm,* 746 A.2d 244.

With these well-settled principles as guideposts, the Court now turns to each of Plaintiff's arguments that demand is excused in this case.

### 1. **Illegal Conduct**

Plaintiff first argues that renominating and endorsing Lepore to serve on the board is a violation of § 8 of the Clayton Act. As such, eBay's conduct was "per se illegal" and not entitled to the presumption of the business judgment rule. Thus, according to Plaintiff, the very act of appointing or nominating Lepore, which in Plaintiff's view is an obvious violation of § 8, takes the board's conduct outside of the ambit of the business judgment rule. Plaintiff insists that he does not need to show that the board intended to violate § 8. (Tr. at 24)

Plaintiff relies primarily on two cases in support of the view that an illegal act by definition excuses demand. *See SCM Corp. v. FTC,* 565 F.2d 807, 811 (2d Cir. 1977); *TRW, Inc. v. FTC,* 647 F.2d 942, 949 (9th Cir. 1981). Both cases, however, stand for the proposition that a corporation itself, as opposed to the individual directors, violates § 8 by nominating an interlocking director to its board. *See TRW,* 647 F.2d at 949 ("In *SCM Corp. v. FTC,* . . . , the Second Circuit rejected arguments identical to those presented by TRW and held that section 8 properly applies to corporations."). Neither case, in fact, discusses demand futility whatsoever.

Even an allegation that a board approved an illegal transaction is not sufficient, standing alone, to overcome the presumptions of the business judgment rule: "One can reasonably conceive of numerous situations in which directors might act on an informed basis, in good faith and in the honest belief that an action taken is in the best interests of the company and yet

12

approve a transaction that, in the end, proves to be unlawful." *Landy v. D'Alessandro*, 316 F. Supp. 2d 49, 64 (D. Mass. 2004). The Delaware Chancery Court has also explained that "[t]here can be no personal liability of a director for losses arising from illegal transactions if a director were financially disinterested, acted in good faith, and relied on advice of counsel reasonably selected in authorizing a transaction."[10] *Gagliardi v. Trifoods Int'l, Inc.*, 683 A.2d 1049, 1051 (Del. Ch. 1996).

Plaintiff's argument, at bottom, is that eBay's board's decision to nominate Lepore was illegal because it violated § 8 of the Clayton Act. To say that a company violated § 8, however, is an altogether different matter than to say that a company **_knowingly_** and **_intentionally_** violated § 8. Here, Plaintiff has come forward with no facts that could support a reasonable inference that eBay's board of directors renominated Lepore knowing that her service on both boards would constitute a violation of § 8. In other words, "the Complaint does not allege with particularity that the Board, when it approved the [transactions], knew that its actions were illegal." *Litt v. Wycoff*, 2003 Del. Ch. LEXIS 23 (Del. Ch. Mar. 28, 2003).

The Supreme Court of Delaware has explained that if a complaint based on a violation of federal law does not give rise to a reasonable inference that "directors knowingly participated in illegal conduct," the complaint fails to satisfy the demand requirement of Rule 23.1. *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008); *see also generally In re Dow Chem. Co. Derivative Litig.*, 2010 Del. Ch. LEXIS 2, at *37 (Del. Ch. Jan. 11, 2010) ("[S]ubstantive second-guessing of the merits of a business decision . . . is precisely the kind of inquiry that the business judgment

---

[10]The complaint does not allege whether the board had the benefit of an opinion of counsel when it decided to re-nominate Lepore.

prohibits."). Accordingly, Plaintiff's argument that demand is excused because eBay's conduct allegedly violated § 8 of the Clayton Act is unavailing.[11]

### 2. *Ultra Vires* Conduct

Plaintiff next argues that the eBay board's conduct in renominating Lepore was *ultra vires* and, therefore, pre-suit demand is excused as a matter of law. (D.I. 24 at 8) *Ultra vires* acts are acts that are beyond the authority of the board. *See, e.g.,* 8 Del. C. § 124; *Black's Law Dictionary* 1522 (6th ed. 1990); *see also California Pub. Employees' Ret. Sys. v. Coulter,* 2002 WL 31888343, at *11 (Del. Ch. Dec. 18, 2002) ("Any action of the board that falls outside the rather broad scope of its authority is not entitled to the protection of the business judgment rule. . . .").

Plaintiff's argument that the eBay board's actions are *ultra vires*, however, misses the mark. Delaware law defines *ultra vires* acts narrowly: "ultra vires acts fall under a much more narrow definition which includes acts specifically prohibited by the corporation's charter, for which no implicit authority may be rationally surmised, or those acts contrary to basic principles of fiduciary law." *Solomon v. Armstrong,* 747 A.2d 1098, 1114 (Del. Ch. 1999). Cases discussing *ultra vires* acts have generally involved acts that are alleged to be contrary to a corporation's charter. *See Lynch v. Coinmaster USA, Inc.,* 614 F. Supp. 2d 494, 501 (D. Del. 2009).

Plaintiff seems to confuse *ultra vires* conduct with actions that are illegal. For example, Plaintiff relies on *Coulter,* 2002 WL 31888343, at *11, but *Coulter* actually supports eBay's

---

[11]Plaintiff has not asserted that the directors were motivated by a subjective intent to harm the corporation.

position here. *Coulter* analyzed the board's allegedly *ultra vires* action by looking to the company's **charter** to determine if the transaction was outside of the powers granted to the board. A provision in the company's charter required shareholder approval before the board could raise the minimum exercise price for option contracts granted to its officers. The plaintiff in *Coulter* alleged that the board had, in fact, raised the minimum exercise price without first seeking shareholder approval. In other words, the board of directors had allegedly taken an action that the company's charter explicitly precluded.

Here, by contrast, eBay's board of directors' actions are only allegedly against the law. No specific provision of eBay's charter prohibits the particular conduct the board took. Plaintiff observes that eBay's charter generally forbids eBay's board of directors from authorizing illegal acts. (D.I. 24 at 7) But accepting Plaintiff's proposition would stretch the *ultra vires* doctrine beyond the narrow confines in which it has been contained under Delaware law.

Clearly, nominating a person to serve on a company's board of directors is not, itself, *ultra vires*. One of the major functions of a board of directors is to nominate qualified individuals to help steer the corporation's business, and eBay's bylaws explicitly authorize the board to nominate candidates. (D.I. 26 at 3) Accordingly, Plaintiff's argument that demand is excused because the board's actions are *ultra vires* is unavailing.

### 3. Bad Faith

Finally, Plaintiff is left with the argument that the board acted in bad faith; that is, that the transaction was so far beyond the bounds of business judgment that it could serve no conceivable rational business purpose, or that the process that led to the determination was deficient. *See Brehm*, 746 A.2d at 264 n.66; *see also Emerald Partners v. Berlin,* 787 A.2d 85, 91 (Del. 2001).

Bad faith normally means that a transaction is undertaken for some purpose "other than a genuine attempt to advance corporate welfare" or is "*known* to constitute a violation of applicable positive law." *Litt v. Wycoff,* 2003 Del. Ch. LEXIS 23 (Del. Ch. Mar. 28, 2003) (emphasis added); *see also In re Walt Disney Co.,* 906 A.2d at 67 (Del. 2006). The three most "salient" examples of bad faith involve a fiduciary who "intentionally acts with a purpose other than that of advancing the best interests of the corporation," "acts with the intent to violate applicable positive law," or "intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *In re Walt Disney Co.,* 906 A.2d at 67.

Under Delaware law, the presumption of good faith is difficult to rebut. *See Gagliardi,* 683 A.2d at 1049. To establish bad faith, "a transaction [must be] authorized for some purpose ***other than*** a genuine attempt to advance corporate welfare or ***is known to constitute*** a violation of applicable positive law." *Id.* at 1051 n.2.

Plaintiff asserts that eBay's board did act in bad faith and knowingly violated federal law. (D.I. 24 at 9-10) Plaintiff relies on three allegations. First, Plaintiff alleges that the board knew that NY Times competes with eBay. In support, Plaintiff points to the following statement in eBay's 2009 public filings: "In many markets in which they operate, including in the U.S., our classified platforms compete against more established online and offline classifieds platforms." (D.I. 12 Ex. A at 39) As Plaintiff argued at the hearing, "'Online and offline.' That's the New York Times." (Tr. at 29) Thus, according to Plaintiff, eBay understands that NY Times is a competitor. Plaintiff next points to the craigslist lawsuit as evidence that the board was clearly aware of the Clayton Act and the statutory prohibition against having interlocking directors. (D.I. 24 at 9) Moreover, Plaintiff argues that eBay's behavior with respect to craigslist

16

demonstrates that eBay has a pattern of placing its board members on other companies' boards to gain competitive advantages. Finally, Plaintiff points to eBay's nomination of Richard Schlossberg as further evidence of eBay's bad faith. Schlossberg, the former CEO of the Los Angeles Times, was nominated to eBay's board because of his experience "as a Chief Executive Officer in the newspaper/publishing industry, which is particularly relevant to eBay's classifieds business." (D.I. 1 at 29)

The Court concludes that these allegations are inadequate to excuse demand due to bad faith. The first of Plaintiff's charges – that the board knew eBay and NY Times were competitors sufficient to raise antitrust concerns – is a purely conclusory accusation that lacks a factual predicate. eBay's 2009 10-K does state that eBay's classifieds business must compete with more established online and offline classifieds platforms. But nowhere does the 2009 10-K state that *NY Times* is a competitor – nor, in fact, does the 10-K state that *any* newspaper is a competitor. Instead, eBay lists several other companies, including, among others, Wal-Mart, Target, Sears, Macy's, Amazon.com, Buy.com, AOL.com, and Yahoo! Shopping.[12]

Plaintiff's reliance on the other two allegations is likewise unavailing. Plaintiff urges this Court to substitute factual averments found in the craigslist lawsuit for factual allegations that *might have been brought* in the context of *this* lawsuit. But there is no allegation in the instant lawsuit that the board or Lepore sought to get secret information from NY Times to aid in eBay's

---

[12]Plaintiff cites to paragraphs 35 and 59 in its complaint for the proposition that eBay publicly acknowledged that NY Times was a competitor. (Tr. at 28; *see also* D.I. 1 at ¶ 35; *id.* at ¶ 59) Neither of these paragraphs, however, contains an explicit statement that eBay and NY Times are competitors. Instead, what these paragraphs recite is the same 2009 10-K that the Court discussed above. The complaint does not contain any reference to an explicit statement in which eBay acknowledges that it competes with NY Times.

own classifieds and advertising business. More fundamentally, knowledge of the Clayton Act prohibitions and violation of it is not sufficient to establish an intentional violation. eBay's public statements that Schlossberg has experience in the publishing industry that is relevant to eBay's classifieds business is not an admission that eBay competes with newspapers generally or NY Times in particular.

At bottom, the alleged § 8 violation presents a close, debatable proposition. Hence, Plaintiff has failed to satisfy its "heavy burden" under the second prong of *Aronson*. *See White v. Panic*, 783 A.2d 543, 551 (Del. 2001). Plaintiff cites *Robert F. Booth Trust v. Crowley* in support of their position. *See* 2010 U.S. Dist. LEXIS 18355 (N.D. Ill. Feb. 26, 2010). That case does bear similarities, both factual and legal, to the instant action.[13] In *Crowley*, the plaintiffs argued that the Sears board of directors breached its fiduciary duties by nominating a director to serve on its board who already served on the board of one of its competitors. *Id.* at *5-6. The plaintiffs there alleged: (1) that the director defendants knew that § 8 prohibited interlocking directors; and (2) that the director defendants knew that the two directors served simultaneously on competing companies' boards of directors. *Id.* at *9-11. The court in *Crowley* explicitly asserted that the non-party companies were "competitors" of the defendant company. *Id.* at *10-11. The court in *Crowley* also specifically noted that the defendant company "publicly acknowledges" that two of the directors "were members of the boards of Sears' competitors." *Id.* Here, that fundamental element – that eBay publicly acknowledges that the NY Times is a competitor – is missing. Plaintiff has pointed to no facts suggesting that eBay's board of

---

[13] Indeed, the two cases share more than factual and legal allegations. They also share the same plaintiffs: the Robert F. Booth Trust and Ronald Gross. *See Crowley*, 2010 U.S. Dist. LEXIS 18355, at *1.

directors considers NY Times a competitor to eBay to a degree sufficient to trigger antitrust concerns.

Without any factual basis to support the inference that eBay's board of directors knew that eBay and NY Times were competitors that would trigger a violation § 8 of the Clayton Act, the board's actions are protected by the presumptions of the business judgment rule and, thereby, the requirement to make demand. Plaintiff has failed to demonstrate that his objections to Lepore's dual service would not have been impartially handled by the Company's board of directors. Accordingly, the Plaintiff has failed to meet the standard for demand futility, and the Court must dismiss his lawsuit.[14]

### B. Section 8 of the Clayton Act

It is undisputed that Plaintiff is proceeding derivatively on behalf of eBay in connection with both his breach of fiduciary duty claim and his § 8 Clayton Act claim. (*See, e.g.*, D.I. 24 at 14 n.7; Tr. at 20) Because Plaintiff has failed to establish that demand is excused under Delaware law, the Court need not determine whether Plaintiff has alleged facts sufficient to state a Clayton Act violation.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant eBay's motion to dismiss. An appropriate Order follows.

---

[14]Plaintiff has requested leave to amend the complaint. (D.I. 24 at 20; *see also* Tr. at 32) Plaintiff's rationale is that he could point to "some things in their papers which I think reveal the board's state of mind." (Tr. at 32) But adding information from Defendants' briefs in this action would not change the Court's analysis. Thus, an additional amendment would be futile. Accordingly, the Court denies Plaintiff's request for leave to amend the complaint.

19